**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

JENNIFER P.,

            *Plaintiff,*

v.

COMMISSIONER OF SOCIAL
SECURITY,

            *Defendant.*

_____/

Case No. 1:25-cv-13023

Patricia T. Morris
United States Magistrate Judge

**MEMORANDUM OPINION AND ORDER ON**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 9, 11)**

## I.    CONCLUSION

For the reasons set forth below, Plaintiff's motion for summary judgment (ECF No. 9) is **DENIED**, the Commissioner of Social Security's motion for summary judgment (ECF No. 11) is **GRANTED**, and the decision of the administrative law judge (ALJ) is **AFFIRMED**.

## II.    ANALYSIS

### A.    Introduction and Procedural History

On July 7, 2018, Plaintiff filed an application for disability insurance benefits, alleging she became disabled on December 31, 2016. (ECF No. 4-2, PageID.1789). The Commissioner initially denied the applications on September 13, 2018. (*Id.*).

1

Plaintiff then requested a hearing before an ALJ, which was held on June 18, 2019. (ECF No. 4-1, PageID.300). The ALJ issued a written decision on October 1, 2019, finding Plaintiff was not disabled. (*Id.* at PageID.300–16). Following the ALJ's decision, Plaintiff requested review from the Appeals Council, which denied the request for review. (*Id.* at PageID.190–92). Plaintiff appealed to the district court, which remanded the case to the Appeals Council upon stipulation of the parties. (ECF No. 4-3, PageID.2217). The Appeals Council remanded to the ALJ with instructions to do the following: consider new evidence; evaluate Plaintiff's fibromyalgia symptoms; and further consider Plaintiff's subjective complaints and residual functional capacity (RFC). (*Id.* at PageID.2221–23).

The ALJ conducted a new hearing on December 12, 2023. (ECF No. 4-2, PageID.1789). On May 8, 2024, the ALJ again determined Plaintiff was not disabled through the date last insured. (*Id.* at PageID.1789–1815). On July 23, 2025, the Appeals Council denied her request for review. (*Id.* at PageID.1763–65).

Following the Appeals Council's denial of review, Plaintiff sought judicial review on September 24, 2025. (ECF No. 1). The parties consented to the Undersigned "conducting any or all proceedings in this case, including entry of a final judgment and all post-judgment matters." (ECF No. 6). The parties have since filed cross-motions for summary judgment for which briefing is complete. (ECF Nos. 9, 11, 15).

**B.      Standard of Review**

District courts have jurisdiction to review the Commissioner's final administrative decisions pursuant to 42 U.S.C. § 405(g).  The review is restricted solely to determining whether "the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (citation modified).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citation modified).  "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).  "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation modified).

A district court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ.  *See Walker v. Sec'y of Health & Hum. Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  Courts will "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite

conclusion." *Id.* (citation modified).

## C.      Framework for Disability Determinations

Disability benefits are available only to those with a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> (i) At the first step, [the ALJ] consider[s] [the claimant's] work activity, if any. If [the claimant is] doing substantial gainful activity, [the ALJ] will find that [the claimant is] not disabled.
>
> (ii) At the second step, [the ALJ] consider[s] the medical severity of [the claimant's] impairment(s). If [the claimant] do[es] not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, [the ALJ] will find that [the claimant is] not disabled.
>
> (iii) At the third step, [the ALJ] also consider[s] the medical severity of [the claimant's] impairment(s). If [the claimant has] an impairment(s) that meets or equals one of [the] listings in appendix 1 of this subpart and meets the duration requirement, [the ALJ] will find that [the claimant is] disabled.
>
> (iv) At the fourth step, [the ALJ] consider[s] [his or her] assessment of [the claimant's] residual functional capacity and . . . past relevant work. If [the claimant] can still do . . . past relevant work, [the ALJ] will find

4

that [the claimant is] not disabled.

(v) At the fifth and last step, [the ALJ] consider[s] [his or her] assessment of [the claimant's] residual functional capacity and . . . age, education, and work experience to see if [the claimant] can make an adjustment to other work.  If [the claimant] can make an adjustment to other work, [the ALJ] will find that [the claimant is] not disabled.  If [the claimant] cannot make an adjustment to other work, [the ALJ] will find that [the claimant is] disabled.

20 C.F.R. § 404.1520(4); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that [he or] she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).  The claimant must provide evidence establishing his or her residual functional capacity (RFC), which "is the most [the claimant] can still do despite [his or her] limitations," and is assessed using "all the relevant evidence in [the] case record."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC and considering relevant

vocational factors." *Rogers*, 486 F.3d at 214 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.   ALJ Findings

Following the five-step sequential analysis, the ALJ determined Plaintiff was not disabled. (ECF No. 4-2, PageID.1815). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from December 31, 2016, the alleged onset date, through June 30, 2017, the date last insured. (*Id.* at PageID.1793). At step two, the ALJ found the following severe impairments: diabetes Type I; left shoulder/bicep tendinosis with SLAP tear,[1] status post May 2017 arthroscopy with debridement and bursectomy;[2] right shoulder supraspinatus tendinosis, status post-surgery; left carpal tunnel syndrome, status post January 2016 release; right carpal tunnel syndrome, status post 2014 release; fibromyalgia; cervical degenerative disc disease; and psychological conditions variously described as: major depressive disorder, generalized anxiety disorder, and persistent depressive disorder. (*Id.*).

At step three, the ALJ found none of the impairments, either independently or in combination, met or medically equaled in severity or duration the criteria of any listing. (*Id.* at PageID.1796–99). With regards to Plaintiff's fibromyalgia, the ALJ found "[n]o acceptable medical source has mentioned fibromyalgia findings

---

[1] An injury to the cartilage surrounding the shoulder socket.

[2] A minimally invasive surgical procedure.

equivalent in severity to the criteria of any listed impairment." (*Id.* at PageID.1798).

Next, the ALJ found Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except the claimant can never climb ladders, ropes, or scaffolds and can occasionally climb ramps and stairs, balance, crouch, kneel, stoop, and crawl. She must have the ability to alternate between sitting and standing, at her option, every 30 minutes for 1–2 minutes so long as she is not off task or has to leave the vicinity of the workstation. With the dominant left upper extremity, she cannot reach overhead or the rear. With the non-dominant right upper extremity, can frequently reach overhead. With the bilateral upper extremities, she can frequently handle, feel, and finger. She can have occasional concentrated exposure to extreme cold, heat, humidity, and wetness. She cannot be exposed to unprotected heights or vibrations. She cannot perform any commercial driving. The claimant can understand, remember, and carry out simple, routine tasks, make judgments on simple work, respond appropriately to usual work situations, and handle occasional changes in a routine work setting. She can occasional[ly] interaction with the general public, supervisors, and coworkers.

(*Id.* at PageID.1799–1800).

At step four, the ALJ found Plaintiff was unable to perform any past relevant work. (*Id.* at PageID.1813). However, at step five, the ALJ found other jobs in the national economy that Plaintiff could perform. (*Id.* at PageID.1814). Specifically, the ALJ found Plaintiff could perform the requirements of an assembler (90,000 jobs in the national economy), an inspector (75,000), and a sorter (55,000), and, if placed on a sedentary RFC, she could perform occupations such as trimmer (7,000), bench packer (8,500), and sorter (9,500). (*Id.*). The ALJ thus concluded Plaintiff was "not disabled" from the alleged onset date through the date last insured. (*Id.* at

PageID.1814–15).

### E.    Administrative Record

Plaintiff raises five issues on appeal.  First, Plaintiff argues the ALJ's finding of a severe impairment for fibromyalgia presented a prima facie case of disability. Second, Plaintiff argues the Appeals Council erred in failing to address issues she raised.  Third, Plaintiff argues the ALJ abused her discretion in refusing to issue subpoenas.  Fourth, Plaintiff argues the ALJ was required to recuse herself.  And finally, Plaintiff argues the ALJ erred in giving greater weight to the consulting medical expert than to her treating physician.

While the Court has reviewed the entire record, it will only summarize the evidence relevant to Plaintiff's issues on appeal.  Additionally, as Plaintiff must establish disability on or before her date last insured of June 30, 2017, records after this time are of low relevance and will not be discussed in detail.

Plaintiff was diagnosed with fibromyalgia in 2017, but had been experiencing symptoms prior to her diagnosis.  (ECF No. 4-2, PageID.1801).  Her symptoms included diffuse joint pain in her hands, wrists, elbows, shoulders, ankles, and feet. (*Id.* at PageID.1419).  She used Aleve and ibuprofen to "take the edge off" her pain. (*Id.*).  Nevertheless, Plaintiff reported biking 25 miles a week in December 2016. (*Id.* at PageID.1362).  In April 2017, Plaintiff was walking her two dogs regularly, 5–10 times a week.  (*Id.* at PageID.1384).

In June 2017, Plaintiff reported being "very active taking care of her 4 kids and 2 dogs" and was planning on going back to work after her shoulder healed from an arthroscopy to fix a rotator cuff tear. (*Id.* at PageID.1420). She had full muscle strength. (*Id.* at PageID.1421). Her doctor recommended sleep hygiene; low impact aerobic exercise for 30 minutes a day, 5 days a week; tai chi; and massage to help improve her fibromyalgia symptoms. (*Id.* at PageID.1423). The same month, Plaintiff reported to her physical therapist that she drove her children several hours to Grayling. (ECF No. 4-1, PageID.1066). In July, Plaintiff reported having a busy weekend with work but no increased symptoms in her shoulder. (*Id.* at PageID.1090).

In December 2017, Dr. Zeinab Saleh, a rheumatologist treating Plaintiff, noted she had started taking Cymbalta and Flexeril, with her pain reduced by about 25%, and that she was still staying active taking care of her kids and dogs. (*Id.* at PageID.1454–55).

Dr. Saleh wrote a letter in December 2017, opining Plaintiff had had severe fibromyalgia since the summer of 2015. (ECF No. 4-3, PageID.2850). His conclusion rested on talking with Plaintiff, examining her, and reviewing an outline of symptoms Plaintiff had provided. (*Id.*). He concluded Plaintiff was at the severe end of the fibromyalgia spectrum "such that it severely interferes with her daily functioning in even routine activities such as walking . . . or doing nearly any other

physical activity that takes more than minimal exertion." (*Id.*).  In November 2023, Dr. April Marquardt wrote a letter opining Plaintiff had had severe fibromyalgia since 2015, "to the point that it interferes with her daily functioning with even routine activities." (*Id.* at PageID.2849).  Both doctors opined Plaintiff was disabled from working.

A medical expert, Dr. Jill Silverman, testified at Plaintiff's hearing. (ECF No. 4-2, PageID.1835–55).  She reviewed all medical records that had been submitted through the time of the hearing. (*Id.* at PageID.1836).  After reviewing Plaintiff's medical records, Dr. Silverman concluded Plaintiff's doctor did not report her fibromyalgia as severe until December 2017, after the date last insured. (*Id.* at PageID.1839).   This is also the first time Dr. Silverman opined Plaintiff's fibromyalgia could arguably equal the listing for inflammatory arthritis based on record evidence. (*Id.*).  Further facts will be discussed below as necessary.

## F.    Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision.  42 U.S.C. § 423(d)(5)(B).  The regulations, applicable to applications for disability benefits filed on or after the effective date of March 27, 2017, such as Plaintiff's application here, distinguish between acceptable medical sources, medical sources, and nonmedical sources.  An acceptable medical source means a medical source who is a:

(1) Licensed physician (medical or osteopathic doctor);

(2) Licensed psychologist, which includes:

    (i)    A licensed or certified psychologist at the independent practice level; or

    (ii)    A licensed or certified school psychologist, or other licensed or certified individual with another title who performs the same function as a school psychologist in a school setting, for impairments of intellectual disability, learning disabilities, and borderline intellectual functioning only;

(3) Licensed optometrist for impairments of visual disorders, or measurement of visual acuity and visual fields only, depending on the scope of practice in the State in which the optometrist practices;

(4) Licensed podiatrist for impairments of the foot, or foot and ankle only, depending on whether the State in which the podiatrist practices permits the practice of podiatry on the foot only, or on the foot and ankle;

(5) Qualified speech-language pathologist for speech or language impairments only. For this source, *qualified* means that the speech-language pathologist must be licensed by the State professional licensing agency, or be fully certified by the State education agency in the State in which he or she practices, or hold a Certificate of Clinical Competence in Speech-Language Pathology from the American Speech-Language-Hearing Association;

(6) Licensed audiologist for impairments of hearing loss, auditory processing disorders, and balance disorders within the licensed scope of practice only . . . ;

(7) Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title, for impairments within his or her licensed scope of practice . . . ; or

(8) Licensed Physician Assistant for impairments within his or her licensed scope of practice . . . .

20 C.F.R. § 404.1502(a) (2021).  A medical source is

> an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law, or an individual who is certified by a State as a speech-language pathologist or a school psychologist and acting within the scope of practice permitted under State or Federal law.

*Id.* § 404.1502(d).  In contrast, a nonmedical source is "a source of evidence who is not a medical source."  *Id.* § 404.1502(e).  "This includes, but is not limited to: (1) [the claimant]; (2) Educational personnel (for example, school teachers, counselors, early intervention team members, developmental center workers, and daycare center workers); (3) Public and private social welfare agency personnel; and (4) Family members, caregivers, friends, neighbors, employers, and clergy."  *Id.*

The Social Security Administration (SSA) "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."  *Id.* § 404.1520c(a).  "The most important factors [the SSA] consider[s] when evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)."  *Id.*  The SSA will consider several factors when it contemplates "the medical opinion(s) and prior administrative medical findings" in a case.  *Id.* § 404.1520c(c).

The first factor is "supportability."  For this factor, "[t]he more relevant the

objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1).

The SSA will also consider the "consistency" of the opinion. In essence, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

In addition, the SSA will consider the source's "[r]elationship with the claimant." *Id*. § 404.1520c(c)(3). This factor includes analysis of:

(i) Length of the treatment relationship. The length of time a medical source has treated [the claimant] may help demonstrate whether the medical source has a longitudinal understanding of [the claimant's] impairment(s);

(ii) Frequency of examinations. The frequency of [the claimant's] visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of [the claimant's] impairment(s);

(iii) Purpose of the treatment relationship. The purpose for treatment [the claimant] received from the medical source may help demonstrate the level of knowledge the medical source has of [the claimant's] impairment(s);

(iv) Extent of the treatment relationship. The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help

demonstrate the level of knowledge the medical source has of [the claimant's] impairment(s);

(v)     Examining relationship.  A medical source may have a better understanding of [the claimant's] impairment(s) if he or she examines [the claimant] than if the medical source only reviews evidence in [the claimant's] folder.

*Id.*

The fourth factor of the SSA's analysis is "specialization."  In making this determination, the SSA will consider

[t]he medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.

*Id.* § 404.1520c(c)(4).

Finally, the SSA will consider "other factors."  These may include any other information that "tend[s] to support or contradict a medical opinion or prior administrative medical finding."  *Id.* § 404.1520c(c)(5).  Other factors include "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." *Id.*  Further, when the SSA considers "a medical source's familiarity with the other evidence in a claim, [it] will also consider whether new evidence [it] receive[s] after the medical evidence source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative

14

medical finding more or less persuasive." *Id.*

As to the duty to articulate how persuasive the medical opinions and prior administrative medical findings are considered, the new regulations provide "articulation requirements." The ALJ will consider "source-level articulation." Pursuant to this requirement,

> [b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for [the ALJ] to articulate in each determination or decision how [he or she] considered all of the factors for all of the medical opinions and prior administrative medical findings in [each] case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative finding(s), [the ALJ] will articulate how [he or she] considered the medical opinions or prior administrative findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.

*Id.* § 404.1520c(b)(1). The regulation reiterates that the ALJ is "not required to articulate how [he or she] considered each medical opinion or prior administrative finding from one medical source individually." *Id.*

The regulations stress that the "factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors [the SSA] consider[s] when [it] determine[s] how persuasive [it] find[s] a medical source's medical opinions or prior administrative medical findings to be." *Id.* § 404.1520c(b)(2). As such, the SSA

> will explain how [it] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative

15

> medical findings in [the claimant's] determination or decision.  [The SSA] may, but [is] not required to, explain how [it] considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when [it] articulate[s] how [it] consider[s] medical opinions and prior administrative medical findings in [the claimant's] case record.

*Id.*

When medical opinions or prior administrative findings are "equally persuasive," "well-supported," and "consistent with the record" "about the same issue," "but are not exactly the same, [the ALJ] will articulate how [he or she] considered the other most persuasive factors . . . for those medical opinions or prior administrative medical findings in [the claimant's] determination or decision." *Id.* § 404.1520c(b)(3).  The regulations clarify that the SSA is "not required to articulate how [it] considered evidence from nonmedical sources using the requirements of paragraphs (a)–(c) of this section." *Id.* § 404.1520c(d).

In addition, the regulations expressly state that the SSA will not consider "evidence that is inherently neither valuable nor persuasive" and "will not provide any analysis about how [it] considered such evidence in [its] determination or decision, even under § 404.1520c." *Id.* § 404.1520b(c).  The regulations categorize evidence that is inherently neither valuable nor persuasive as: "[d]ecisions by other governmental and nongovernmental entities"; "[d]isability examiner findings," meaning "[f]indings made by a State agency disability examiner made at a previous level of adjudication about a medical issue, vocational issue, or the ultimate

16

determination about whether [the claimant is] disabled"; and "[s]tatements on issues

reserved to the Commissioner[,]" including

> (i) Statements that [the claimant is] or [is] not disabled, blind, able to work, or able to perform regular or continuing work;
>
> (ii) Statements about whether or not [the claimant has] a severe impairment(s);
>
> (iii) Statements about whether or not [the claimant's] impairment(s) meet the duration requirement . . . ;
>
> (iv) Statements about whether or not [the claimant's] impairment(s) meets or medically equals any listing in the Listing of Impairments . . . ;
>
> (v) Statements about what [the claimant's] residual functional capacity is using [the SSA's] programmatic terms about the functional exertional levels . . . instead of descriptions about [the claimant's] functional abilities and limitations . . . ;
>
> (vi) Statements about whether or not [the claimant's] residual functional capacity prevents [the claimant] from doing past relevant work . . . ;
>
> (vii) Statements that [the claimant] [does] or [does] not meet the requirements of a medical-vocational rule . . . ; and
>
> (viii) Statements about whether or not [the claimant's] disability continues or ends when [the SSA] conduct[s] a continuing disability review.

*Id.* § 404.1520b(c)(3).

The regulations also provide that

> [b]ecause a decision by any other governmental agency or a nongovernmental entity about whether [a claimant is] disabled, blind, employable, or entitled to any benefits is based on its rules, it is not

binding on [the SSA] and is not [its] decision about whether [the claimant is] disabled or blind under [SSA] rules.

*Id.* § 404.1504. Therefore, the SSA "will not provide any analysis in [its] determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether [the claimant is] disabled, blind, employable, or entitled to any benefits." *Id.* The SSA will, however, "consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that [it] receive[s] as evidence in [a] claim . . . ." *Id.*

The regulations clarify that "[o]bjective medical evidence means signs, laboratory findings, or both." *Id.* § 404.1502(f). Signs are defined as "one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [the claimant's] statements (symptoms)." *Id.* § 404.1502(g). Further, "[s]igns must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development or perception, and must also be shown by observable facts that can be medically described and evaluated." *Id.* Laboratory findings "means one or more anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques," which "include chemical tests (such as blood tests),

18

electrophysiological studies (such as electrocardiograms and electroencephalograms), medical imaging (such as X-rays), and psychological tests." *Id.* § 404.1502(c).

The most recent amendments to the regulations also tweaked the manner in which the SSA evaluates symptoms, including pain:

> In determining whether [the claimant is] disabled, [the SSA will] consider all [the claimant's] symptoms, including pain, and the extent to which [the] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. [The SSA] will consider all [the claimant's] statements about [his or her] symptoms, such as pain, and any description [the claimant's] medical sources or nonmedical sources may provide about how the symptoms affect [the claimant's] activities of daily living and [his or her] ability to work.

*Id.* § 404.1529(a). But the SSA clarified that

> statements about [the claimant's] pain or other symptoms will not alone establish that [the claimant is] disabled. There must be objective medical evidence from an acceptable medical source that shows [the claimant has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence of [the claimant's] pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that [the claimant is] disabled.

*Id.* Further, "[i]n evaluating the intensity and persistence of [the claimant's] symptoms, including pain, [the SSA] will consider all of the available evidence, including [the claimant's] medical history, the medical signs and laboratory findings, and statements about how [the claimant's] symptoms affect [him or her]." *Id.* The

19

SSA will "then determine the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [the claimant's] symptoms affect [his or her] ability to work." *Id.*

Finally, the SSA noted that "[b]ecause symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, [it] will carefully consider any other information [the claimant] may submit about [his or her] symptoms." *Id.* § 404.1529(c)(3).  This other information may include "[t]he information that [the claimant's] medical sources or nonmedical sources provide about [the claimant's] pain or other symptoms," such as "what may precipitate or aggravate [the claimant's] symptoms, what medications, treatments or other methods [the claimant uses] to alleviate them, and how the symptoms may affect [the claimant's] pattern of daily living," which "is also an important indicator of the intensity and persistence of [the claimant's] symptoms." *Id.*

> Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions that [the claimant's] medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account . . . . [The SSA] will consider all of the evidence presented, including information about [the claimant's] prior work record, [the claimant's] statements about [his or her] symptoms, evidence submitted by [the claimant's] medical sources, and observations by [the SSA's] employees and other persons.

*Id.* Factors relevant to a claimant's symptoms, such as pain, include:

> (i)   [D]aily activities;
>
> (ii)  The location, duration, frequency, and intensity of . . . pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv)  The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
>
> (v)   Treatment, other than medication, . . . received for relief of . . . pain or other symptoms;
>
> (vi)  Any measures . . . used to relieve . . . pain or other symptoms.

*Id.*

The new regulations also impose a duty on the claimant: "[i]n order to get benefits, [the claimant] must follow treatment prescribed by [his or her] medical source(s) if this treatment is expected to restore [his or her] ability to work." *Id.* § 404.1530(a). Stated differently, "[i]f [the claimant does] not follow the prescribed treatment without a good reason, [the SSA] will not find [the claimant] disabled or, if [the claimant is] already receiving benefits, [the SSA] will stop paying . . . benefits." *Id.* § 404.1530(b). Acceptable (or "good") reasons for failure to follow prescribed treatment include:

> (1)   The specific medical treatment is contrary to the established teaching and tenets of [the claimant's] religion;
>
> (2)   The prescribed treatment would be cataract surgery for one eye,

21

when there is an impairment of the other eye resulting in a severe loss of vision and is not subject to improvement through treatment;

(3)     Surgery was previously performed with unsuccessful results and the same surgery is again being recommended for the same impairment;

(4)     The treatment because of its magnitude (e.g., open heart surgery), unusual nature (e.g., organ transplant), or other reason is very risky for [the claimant]; or

(5)     The treatment involves amputation of an extremity, or a major part of an extremity.

*Id.* § 404.1530(c).

## G.     Argument and Analysis

As stated above, Plaintiff argues the ALJ's finding of a severe impairment for fibromyalgia presented a prima facie case of disability.  Second, Plaintiff argues the Appeals Council erred in failing to address issues she raised.  Third, Plaintiff argues the ALJ abused her discretion in refusing to issue subpoenas.  Fourth, Plaintiff argues the ALJ was required to recuse herself.  And finally, Plaintiff argues the ALJ erred in giving greater weight to the consulting medical expert than to her treating physician.

### 1.     Fibromyalgia as Prima Facie Evidence of Disability

Plaintiff first argues that the ALJ's step two determination that her fibromyalgia was a "severe medical condition" was prima facie evidence of total disability.  (ECF No. 9, PageID.3559).

Plaintiff's arguments are difficult to understand and follow, but there are several notable issues with them. First, Plaintiff appears to argue the Court should engage in a de novo review of the ALJ's factual findings. (*Id.* at PageID.3561). But, as discussed above, this Court does not conduct a de novo review of the ALJ's decision. *E.g.*, *Dodds v. Comm'r of Soc. Sec.*, No. 01-cv-72190, 2002 WL 1880754, at \*2 (E.D. Mich. June 30, 2002). Instead, the question is whether substantial evidence supports the ALJ's findings. *Sullivan*, 595 F. App'x at 506. Furthermore, Plaintiff cites no precedent for the proposition that a diagnosis of fibromyalgia automatically entitles her to benefits. Indeed, she cannot. *See, e.g.*, *Torres v. Comm'r of Soc. Sec.*, 490 F. App'x 748, 754 (6th Cir. 2012) ("[A] *diagnosis* of fibromyalgia does not automatically entitle [a claimant] to disability benefits." (quotation omitted)). Plaintiff does not argue substantial evidence does not support the ALJ's decision. Therefore, the ALJ did not err. *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490–91 (6th Cir. 2006) ("[W]e limit our consideration to the particular points that Hollon appears to raise in her brief on appeal.").

These and other errors are replete throughout Plaintiff's reply brief as well. First, Plaintiff's counsel, Jamil Akhtar, is reminded of the page limits set forth in Local Rule 7.1(d)(3)(B), which states that a reply brief may not exceed 7 pages without leave of Court. Plaintiff's reply brief is 18 pages without leave of Court.

Further, and of greater concern, are Plaintiff's citations and quotations, which

23

are messy, misleading, and inaccurate.  For example, Plaintiff purports to block quote a 1978 Sixth Circuit case that cites cases from the 1980s and 1990s.  (*See* ECF No. 15, PageID.3615–16).  Even the first sentence is not an actual quote from the case (which is also miscited).  Moreover, Plaintiff attributes a Northern District of Ohio case to the Sixth Circuit.  (*See id.* at PageID.3623).

The Court does not know whether these are AI "hallucinations" (instances where AI programs made stuff up) or just sloppy work on counsel's part.  *See Hunt v. Morissette*, No. 24-cv-12947, 2025 WL 1660358, at *1 (E.D. Mich. June 11, 2025) (explaining AI hallucinations).  Whether AI generated or not, however, counsel is subject to Federal Rule of Civil Procedure 11.  The Court strongly reminds him that he has an independent obligation to the Court to present only non-frivolous legal arguments and factual contentions with evidentiary support.  *See, e.g.*, Fed. R. Civ. P. 11.

### 2.    Appeals Council

Plaintiff next argues the Appeals Council used the wrong standard in reviewing the ALJ's decision.  (ECF No. 9, PageID.3562).  But the Appeals Council's denial of review is not before this Court.  Instead, the Court's review is limited to reviewing the final decision of the ALJ.  *E.g.*, *Thick v. Comm'r of Soc. Sec.*, No. 18-cv-10154, 2018 WL 6683348, at *15 (E.D. Mich. Nov. 29, 2018) (collecting cases that the court's review is limited to the ALJ's decision), *report and*

24

*recommendation adopted*, 2018 WL 6650305 (E.D. Mich. Dec. 19, 2018).

### 3.    Subpoenas

Plaintiff next argues the ALJ erred when she refused to issue subpoenas to two physicians employed by the Michigan Disability Determination Service. (ECF No. 9, PageID.3565). Specifically, Plaintiff wanted to inquire further into the effects her diabetes has on her. (ECF No. 4-3, PageID.2675). The ALJ denied the request, finding "they are not necessary for the disposition of the case and the record supports that there are medical records in accordance with the video material as well as testimony." (ECF No. 4-2, PageID.1790).

An ALJ's decision regarding a request to issue a subpoena is reviewed for an abuse of discretion. *Luukkonen v. Comm'r of Soc. Sec.*, 653 F. App'x 393, 403 (6th Cir. 2016). An ALJ may issue a subpoena "[w]hen it is reasonably necessary for the full presentation of a case." 20 C.F.R. § 416.1450(d)(1). The party requesting a subpoena must show, among other things, why the facts the witness is expected to prove "could not be proven without issuing a subpoena." *Id.* § 416.1450(d)(2).

The ALJ found the subpoenas were not necessary as there were medical records presenting the facts Plaintiff was trying to show through the introduction of videos and testimony. (ECF No. 4-2, PageID.1790). Plaintiff's request indicated the evidence would be used to establish Plaintiff's Type I Diabetes and the effects it has on her. (ECF No. 4-3, PageID.2675). Plaintiff both failed to show in her

25

request—and now fails to argue—why the requested information could not have been proven without issuing a subpoena.  *Luukkonen*, 653 F. App'x at 405. Moreover, her brief seems to now argue the subpoenas were necessary to inquire into her fibromyalgia.  (ECF No. 9, PageID.3566).  This was not the basis for her initial request and the Court will not consider this new argument. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 288 (6th Cir. 2009).  Plaintiff has not argued nor shown that the subpoenas were necessary to show the effects from her diabetes and therefore has not shown the ALJ abused her discretion in denying them.

### 4.    Treating Physician

Plaintiff next argues the ALJ erred by accepting the opinion of the medical expert consulted during the hearing instead of Plaintiff's treating physicians who both opined Plaintiff had been suffering severe fibromyalgia since 2015 and was disabled.  (ECF No. 9, PageID.3568).

Plaintiff recognizes that the treating physician rule is not applicable to applications, like hers, filed after March 27, 2017.  (*Id.* at PageID.3570).  Further, Plaintiff recognizes that an ALJ must now explain the supportability and consistency of a medical source's opinion.  (*Id.*).  Nevertheless, Plaintiff fails to argue the ALJ erred in her analysis of the supportability and consistency of Dr. Saleh's and Dr. Marquardt's letters.  Indeed, the ALJ gave a detailed analysis describing why she found these letters unsupported by their treatment notes and inconsistent with other

medical evidence. (*See* ECF No. 4-2, PageID.1810–12).

First, both doctors supplied opinions that Plaintiff was disabled, which the ALJ properly dismissed as decisions reserved for the Commissioner. 20 C.F.R. § 404.1520b(c)(3). Second, the ALJ discussed that the letter's conclusions were unsupported by treatment notes that indicated Plaintiff had a much higher level of activity than they opined she had the ability to do. Third, the letters were inconsistent with medical evidence of record showing full muscle strength, only slight discomfort, and no acute distress during the relevant time period. Finally, as to Dr. Marquardt's letter, it largely dealt with treatment occurring five years after the date last insured, which was not very persuasive as to the issues before the ALJ. Plaintiff has not shown any error in the ALJ's analysis.

### 5. Recusal

Finally, Plaintiff argues the ALJ should have recused herself. (ECF No. 9, PageID.3573).

> An administrative law judge shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision. If you object to the administrative law judge who will conduct the hearing, you must notify the administrative law judge at your earliest opportunity. The administrative law judge shall consider your objections and shall decide whether to proceed with the hearing or withdraw.

20 C.F.R. §§ 404.940, 416.1440. Specifically, Plaintiff argues "[t]he attitude and tone of voice by the ALJ Mantel was uncalled for and demeaning in her questioning

of both [Plaintiff and] counsel." (ECF No. 9, PageID.3575).  As evidence, Plaintiff points to the portion of the ALJ's decision where she discussed Plaintiff's credibility, described the record evidence, and concluded by finding Plaintiff was not credible. (*Id.*).

This is a standard approach in an ALJ decision.  As discussed above, an ALJ must evaluate a claimant's alleged symptoms using a two-step process; allegations alone are not sufficient to establish an impairment or disability.  *See* 20 C.F.R. 404.1529(a); *see also* SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017).  The Court's review of the decision shows the ALJ followed the two steps described above in a professional manner when assessing Plaintiff's allegations of disabling symptoms.  Similarly, Plaintiff argues the ALJ's decision saying "[she] will issue a subpoena if reasonably necessary for the full presentation of the case" is "most upsetting" and shows harassment by the ALJ.  (ECF No. 9, PageID.3577).  Not so. As discussed above, this is the legal standard used when deciding whether issuing a subpoena is necessary.  *See* 20 C.F.R. § 416.1450(d)(1).  Nor is there any "harsh language" in the Appeals Council's remand order which would automatically cause an ALJ to be prejudiced against a party on remand.  (*See* ECF No. 4-2, PageID.1927–29).  Plaintiff has not shown any prejudice, partiality, personal interest, or even an appearance of impropriety that would require recusal.

Plaintiff then cites to several pages of the hearing transcript as evidence of a

28

demeaning attitude.  (ECF No. 9, PageID.3575 (citing ECF No. 4-3, PageID.2536–38, 2542–43, 2549–53)).  The Court's review of the transcript does not show any behavior evincing prejudice, partiality, personal interest, an appearance of impropriety, or any other reason that might require recusal.  During the hearing, there appeared to be some confusion as to what exhibit Plaintiff's counsel was referencing.  (ECF No. 4-3, PageID.2537).  Counsel then informed the ALJ he did not have access to the electronic exhibits, and the ALJ stopped the hearing to order a CD of the exhibits for counsel and gave him an opportunity to write a post-hearing brief on the issue.  (*Id.* at PageID.2537–38).  In the next part Plaintiff cites, the ALJ interrupted counsel's questioning as irrelevant.  (*Id.* at PageID.2542).  Plaintiff does not challenge this evidentiary issue as error and it is well within the ALJ's bounds to manage evidence at the hearing.  Finally, counsel informed the ALJ there was some additional medical evidence he wished to submit.  (*Id.* at PageID.2550).  The ALJ inquired into whether the additional evidence was listed in counsel's five-day letter.  When counsel admitted it had not been, the ALJ questioned whether it should be admitted as it did not comply with the rules.  After counsel admitted he had erred, the ALJ still gave him an opportunity to submit the evidence if it related to the time period at issue (it did not).  (*Id.* at PageID.2551).  While acknowledging the Court cannot hear the tone of voice used during the hearing by reviewing the transcript, the Court's review shows nothing out of the ordinary when dealing with evidentiary

29

issues and other trial-related rulings.  Thus, Plaintiff has not met her burden to show recusal was necessary.

Finally, to the extent Plaintiff's arguments refer to adverse rulings made during the proceedings, she has failed to show bias.  (*See* ECF No. 9, PageID.3578 ("The ALJ committed pure legal error in the ALJ's interpretation of the governing law, regulations, and mandatory rulings.")).  "An adverse ruling alone is not enough to support a finding of bias." *Perschka v. Comm'r of Soc. Sec.*, 411 F. App'x 781, 788 (6th Cir. 2010); *see also Shepard v. Comm'r of Soc. Sec.*, No. 17-cv-10197, 2018 WL 1833513, at *10–*12 (E.D. Mich. Jan. 11, 2018), *report and recommendation adopted*, 2018 WL 1061696 (E.D. Mich. Feb. 27, 2018); *Meyers v. Comm'r of Soc. Sec.*, No. 17-cv-706, 2018 WL 4266244, at *4 (W.D. Mich. Aug. 15, 2018) ("The ALJ is presumed to have exercised her powers with honesty and integrity, and the plaintiff has the burden of overcoming the presumption of impartiality with convincing evidence that a risk of actual bias or prejudgment is present." (quotation omitted)), *report and recommendation adopted*, 2018 WL 4252452 (W.D. Mich. Sep. 6, 2018).  Plaintiff has failed to show any reason why the ALJ should have recused herself.

## III.   <u>ORDER</u>

For these reasons, Plaintiff's motion (ECF No. 9) is **DENIED**, the Commissioner's motion (ECF No. 11) is **GRANTED**, and the ALJ's decision is

**AFFIRMED**.

      **IT IS SO ORDERED.**

Date: May 27, 2026                      S/ PATRICIA T. MORRIS
                                            Patricia T. Morris
                                            United States Magistrate Judge